IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DANA LOOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No._____ |
| v. ) | (JURY DEMAND) |
| ) | |
| CITY OF ALGOOD, ) | |
| City Manager KEITH MORRISON, ) | |
| in his Individual and Official capacities, ) | |
| and Police Chief GARY HARRIS, in his ) | |
| Individual and Official capacities, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW the plaintiff DANA LOOPER ("Plaintiff" or "Looper"), and as cause of action against the CITY OF ALGOOD ("Algood"), City Manager KEITH MORRISON ("Morrison") and Police Chief GARY HARRIS ("Harris"), would state and show as follows:

### I.
### Background, Parties & Jurisdiction

1. This is an action seeking damages and other relief for alleged wrongful discharge in retaliation for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. §2000e, et seq.,* and in violation of the Tennessee Human Rights Act ("THRA"), *Tenn.Code Ann. §4–21–101, et seq.* Additionally, the plaintiff brings suit for injunctive relief and damages under *42 U.S.C. §1983* and *42 U.S.C. §1988,* contending that she was wrongfully discharged in retaliation for the exercise of her free speech rights and in violation of her freedom of association, rights protected under the First Amendment to the United States

1

Constitution, and her due process rights under the Fourteenth Amendment to the United States Constitution.

2. The plaintiff Dana Looper, an adult female, at all times relevant has been a resident citizen within the jurisdiction of the U.S. District Court, Middle District of Tennessee, Northeast Division.

3. The defendant City of Algood is a municipality located in Putnam County, Tennessee, created pursuant to the laws of the State of Tennessee as well as by and through the Charter of Algood, Tennessee, Chapter 615 of the Acts of 1911, Article I, Section 1.01.

4. The defendant Keith Morrison is an adult resident citizen of Tennessee and may be served with process according to law. At all relevant times Morrison was appointed to serve by the Algood City Council as the City Manager and Administrator for the City of Algood. He has been sued in his official and his individual capacities.

5. The defendant Gary Harris is an adult resident citizen of Tennessee and may be served with process according to law. At all relevant times Harris was appointed to serve by the Algood City Council as the Police Chief for the Algood Police Department. He has been sued in his official and his individual capacities.

6. This Court has jurisdiction over Looper's Title VII and First Amendment claims asserted herein pursuant to *28 U.S.C. §1331* and *28 U.S.C. §1343*.

7. This Court has supplemental jurisdiction over Looper's related State law claims pursuant to *28 U.S.C. §1367*.

8. All of the relevant facts, circumstances and events giving rise to this complaint, including Looper's employment, administrative suspension and termination from employment

with the City of Algood by and through its appointed City Manager and Police Chief, occurred in Putnam County, Tennessee. As such, venue resides in the United States District Court for the Middle District of Tennessee, Northeastern Division, pursuant to *28 U.S.C. §1391 and 28 U.S.C. §123*.

## II.
## Facts

9. Looper was employed as a police officer by the Algood Police Department in March 2008, was promoted to sergeant in 2011, and served in that role until being terminated in October 2015.

10. Prior to October 5, 2015, Looper had an unblemished employment record without oral or written discipline, and Algood's Police Chief had stated an intention to promote Looper to be his assistant police chief.

11. At all relevant times Algood had in place a City of Algood Employee Personnel Handbook (the "Personnel Handbook"). As well, commissioned Police Department officers were under a separate chain of command from other City of Algood employees and the Algood Police Department had adopted a separate Police Department Policy and Procedure Manual (the "Police Policy Manual") governing police officer conduct.

12. As an appointed city official defendant Gary Harris, in his role as the Algood Chief of Police, had administrative control of the Police Department and its employees including Looper, and was in charge of hiring, firing and disciplinary matters within the Algood Police Department.

13. Defendant Keith Morrison, although the City Manager, was not in the police officer chain of command and was precluded from performing the functions of the Algood Police Chief by duly adopted City Ordinances.

14. In the years preceding Looper's termination, only a few female officers were employed in the Algood Police Department. Although there had been numerous female applicants during this time, supervisory officials stated more than once that the force already had enough females, and none of these female applicants were seriously considered or hired.

15. Throughout the time of Looper's employment, the Algood Police Department had exhibited a pattern and practice of discriminatory conduct, improper sexual advances, sexual and racial harassment, sexually suggestive and other inappropriate statements and slurs, and a generalized hostile working environment directed towards females as well as other minorities within the Police Department. Women were objectified within the Department, and vulgar, coarse and obscene language was used by persons within the Police Department up to and including the Chief of Police. This hostile working environment was well known, tolerated and condoned by Police Department supervisory personnel and the Algood City Manager.

16. In the latter part of 2012, after ongoing and escalating problems with inappropriate sexual comments, hostile work environment and sexual harassment by her immediate supervisory officer, another female officer (identified as "Officer X") finally reported this illegal conduct to the Chief of Police in efforts to end the misconduct.

17. The Chief of Police asked Officer X to forego filing a formal complaint, instead assuring her that he would take appropriate steps to end this illegal misconduct. Instead, on August 6, 2012, the Chief of Police terminated Officer X for insubordination because she had

4

told another Algood employee of her complaint. No counseling or other disciplinary action was taken against Officer X's harassing supervisor for this incident, and from both personnel files, it was as if the sexual harassment and hostile work environment complaint had never been made.

18.     Officer X retained counsel, who outlined in writing and in great detail the pattern of harassment, illegal conduct and hostile working environment that Officer X had encountered, as well as the retaliatory nature of her discharge in response to her request that the Chief of Police stop the illegal conduct. Implicit with the filing by Officer X's attorney and his communications with agents of the City was that an EEOC charge of discrimination and discrimination lawsuit would be forthcoming.

19.     When confronted with the facts of Officer X's harassment, the retaliatory nature of her termination by Police Department officials in response to her complaints, and the implicit EEOC charge and lawsuit that were sure to be forthcoming, Officer X was quietly reinstated to her position with the Police Department and made whole in the early part of 2013, executing a settlement agreement resolving all disputes. Included within the settlement agreement was Algood's assurance that Officer X would not be retaliated against for asserting her discrimination claims. Rather than follow proper governmental protocol and procedure, however, the settlement of her claims and her reinstatement were concealed from public knowledge, scrutiny or review. No formal City Council action occurred to reinstate Officer X, no disciplinary action was taken against the harassing supervisory officer for the sexual harassment that she had alleged, and the Chief of Police was not disciplined for his retaliatory discharge of Officer X. For all intents and purposes to the public at large as well as to the Algood City Council body as a whole, it was as if the incident with Officer X had never occurred.

5

20. The harassing supervisory officer who had sexually harassed Officer X resigned in 2014, after being confronted with possible discipline or termination in an unrelated matter. The threat of termination to this harassing supervisory officer, again, occurred without public or even City Council scrutiny, all as documented in a letter signed by some but not all of the City Council members and in a format deemed to have violated Tennessee's Open Meetings Act (the "2014 Letter"). The 2014 Letter made specific and detailed reference to the sexual discrimination allegations made by Officer X, her termination and reinstatement, the failure to discipline the harassing supervisory officer accused of harassing her, as well as the fact that information concerning Officer X's allegations, termination or reinstatement had not been communicated to all of Algood's City Council members at the time.

21. Approximately one year later, in April 2015, the 2014 Letter and the circumstances involving Officer X's sexual discrimination complaint came to light as a result of an Open Records request, resulting in a heated and contentious City Council meeting attended by the public as well as several officers from the Algood Police Department. Portions of the letter referencing Officer X's allegations against the harassing supervisory officer were read in the open meeting, bringing her complaints to public light for the first time. In that contentious public meeting, one or more Algood police officers took the side of the harassing supervisory officer who had allegedly sexually harassed Officer X.

22. From and after this public disclosure occurring in late April 2015, Officer X encountered actual or perceived retaliatory actions directed towards her and towards female officers in general by Algood supervisory and other police officers. For position openings and promotions, one or more supervisory officers stated that they would hire "no more women" in

the Algood Police Department. Officer X applied for a posted sergeant opening within the Police Department. Knowing that she had small children, Officer X was informed that the open sergeant position was for night shift only, and as a result, she withdrew her application. However, the open position was filled by a male officer and was in fact on the day shift. The Chief of Police kept a log about and/or recorded conversations with Officer X. He also tape recorded and/or kept records of her actions. Police officers and supervisors shunned and ostracized Officer X and would no longer communicate with her on even routine police matters or safety information. Statements were made in her presence or directed towards Officer X, which made clear that she was no longer considered part of the team.

23. After repeated problems with other officers generally and with her supervising officers in particular, in early September 2015 Officer X finally confided in Looper, a fellow female officer, about her concerns. Officer X expressed her feeling that she was being unfairly retaliated and discriminated against for filing her prior sexual harassment complaint against the harassing supervisory officer. At the end of this conversation, Looper suggested that Officer X contact an attorney to discuss her rights and options.

24. Police Chief Harris learned that Looper had recommended that Officer X consult an attorney. When approached, Officer X informed Harris that she did not want to jeopardize her job by talking to a lawyer. Despite knowing of Officer X's prior discrimination claims, termination, and reinstatement under a settlement agreement, of her perceived ongoing concerns with her supervisors about retaliation, and of her concerns that consulting an attorney might again jeopardize her employment, defendant Harris took no steps to inquire further or to otherwise assure that Officer X was not further harassed or retaliated against. Instead, on or

about September 7, 2015, a meeting of police supervisors was called by defendant Harris. Despite Looper's status as a sergeant on the police force, at Harris's instruction, Looper for the first time was excluded from a supervisory meeting. In this supervisory meeting, Defendant Harris discussed Looper's recommendation that Officer X consult an attorney, and asked other supervisors how he should handle Looper's recommendation. Harris had similar discussions thereafter with other police officers and Algood employees, including City Manager defendant Morrison. At least one supervisory officer suggested that Looper should be terminated for referring Officer X to an attorney.

25. From and after the September 2015 supervisory meeting from which she was excluded, Looper encountered hostility and escalating problems with her superiors including defendant Harris, and with City Manager defendant Morrison, in the performance of Looper's work and job assignments. Defendant Morrison complained about the "tone" of Looper's emails. Defendant Harris exhibited visible anger with Looper on several occasions. Police officers would no longer communicate with her on even routine police matters, and it became apparent that she was being treated differently and was no longer considered a member of the team. At least one police officer deleted Looper from his Facebook friends account. Despite having a spotless employment record, after the September 2015 supervisor's meeting, Looper was repeatedly and unjustifiably criticized by defendant Harris and by defendant Morrison, and inappropriately threatened with discipline.

26. Looper, along with another police officer, had been scheduled by her supervisory officer to travel with the supervisor to Columbia, Tennessee, on October 5, 2015, to retrieve new patrol cars. When Looper pulled into the parking lot that morning, City Manager defendant

8

Morrison, who was not in her police department chain of command, approached Looper and stated that he had decided to cancel her police department-assigned trip to Columbia. He then insisted that Looper work in the office on police matters instead of retrieving the patrol cars in Columbia. Having received previous orders from her Police Department supervisor in her chain of command to retrieve patrol cars in Columbia, and since that order had not been countermanded, Looper respectfully declined Morrison's request. Although not in her chain of command, Morrison immediately suspended Looper and sent her home.

27. Under the written terms of the Police Policy Manual, as City Manager, defendant Morrison was not in Looper's chain of command and so was not empowered to give or to contravene police departmental orders, and he and defendant Harris were well aware of this fact.

28. On October 12, 2015, Looper was terminated by defendant Harris as her department head and the Chief of Police for the stated reasons of "inefficiency in the performance of your duties, violating or disregarding directives given to you by your superior(s) and insubordination."

29. In making his decision to terminate Looper, defendant Harris relied in large part upon a written Memorandum that he had assembled after Looper's suspension that alleged a series of disciplinary actions involving Looper prior to October 5, 2015. One of the factors defendant Harris listed in his termination decision was Looper's recommendation that Officer X consult with an attorney.

30. None of these alleged previous disciplinary actions in defendant Harris's Memorandum had legal basis or support. These were manufactured reasons, and Looper had never been disciplined prior to October 5, 2015. None of those matters listed in defendant

9

Harris's Memorandum should have been considered in the decision to terminate, a fact which defendant Harris later admitted under oath. Defendant Harris acknowledged that these reasons were manufactured and that one of the motivating factors in Looper's termination was her recommendations that Officer X consult counsel.

31. Despite having been a witness to and a participant in the claimed insubordinate event, and having been requested to recuse himself as hearing officer on Looper's appeal, defendant Morrison nonetheless acted as the hearing officer on Looper's decision to appeal her termination. In upholding that decision, and despite defendant Harris's admission that the items listed in his Memorandum were not proper considerations in the termination decision, defendant Morrison upheld termination based upon Looper's "pattern of behavior" and because she was insubordinate "on multiple occasions."

32. Prior to Looper's termination, the Algood Police Department had a recent record of a number of disciplinary actions taken involving male police officers, some with prior disciplinary infractions and for matters including insubordination far more serious than that of which Looper was accused. In the cases of each of these male officers, all were given second chances before being terminated. Looper, by contrast, despite having no prior disciplinary history, was terminated for declining a contradictory order that had been given by someone outside of her Police Department chain of command. Looper has suffered lost wages and benefits and other allowable damages under federal and State law, as well as attorney's fees and costs as a result of her wrongful and illegal termination.

33. Looper filed a timely charge of discrimination and retaliation based upon sex with the Tennessee Human Rights Commission and EEOC on the proper proscribed form, a right-to-sue letter has been issued by the EEOC, and this complaint is filed within ninety (90) days of issuance of that letter.

### III.
### Claims & Causes of Action

Count One – First and Fourteenth Amendment Violations (42 U.S.C. §1983)
(City of Algood)

34. By providing advice to a fellow female police officer concerning perceived sexual discrimination and retaliatory conduct violating federal and State law as well as the official policies of the City of Algood, Looper was speaking in a personal capacity on a matter of public concern. The value and importance of this speech outweighed any potential disruption of government or workplace efficiency.

35. As a result of her conversation with Officer X, Looper was retaliated against and unlawfully terminated, in violation of and retaliation for the exercise of her rights to freedom of speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution, and actionable under *42 U.S.C. §1983*.

36. The acts of defendant Gary Harris as Police Chief, and of defendant Keith Morrison as City Manager, in unlawfully terminating Looper's employment exhibited deliberate indifference to Looper's exercise of her constitutionally protected rights.

37. As the appointed Police Chief, defendant Gary Harris was delegated with the authority to act on behalf of the City of Algood in employment decisions concerning police officers under his control, including the decision to suspend and to terminate Looper. As such,

11

all of his unlawful actions are considered actions of the City of Algood, and so the City of Algood is responsible for the consequences of his unlawful decisions while acting in his official capacity.

38. As the appointed City Manager, defendant Keith Morrison was delegated with implied or direct authority to act on behalf of the City of Algood in employment decisions and administrative appeals. By taking unilateral action to first suspend Looper because she disregarded his knowingly unlawful order, thereafter participating in the decision to terminate Looper, continuing to act as hearing officer even though he was a participant and witness and had been asked to recuse himself, and ultimately upholding her termination in her administrative appeal based upon reasons that defendant Harris had acknowledged were improper, Morrison acted for and on behalf of the City of Algood. As such, all of his unlawful actions are considered actions of the City of Algood, and so the City of Algood is responsible for the consequences of his unlawful decisions while acting in his official capacity.

39. This misconduct by Harris and Morrison, each in their official capacities as and for the City of Algood, was so closely related to the deprivation of Looper's rights as to be the moving force and motivating factor causing her wrongful termination and damages, and was knowingly and wrongfully undertaken by each of them in deprivation of Looper's constitutionally guaranteed rights.

40. Looper is entitled to compensatory and punitive damages, and attorney's fees against the City of Algood, in an amount to be determined according to proof.

## Count Two – First and Fourteenth Amendment Violations (42 U.S.C. §1983)
### (Defendants Keith Morrison and Gary Harris Individually)

41. By providing advice and counsel to a fellow female police officer concerning perceived sexual discrimination and retaliatory conduct violating federal and State law as well as the official policies of the City of Algood, Looper was speaking as a private citizen on a matter of public concern. The value and importance of this speech far outweighed any potential disruption to governmental functions or workplace efficiency.

42. As a result of her conversation with Officer X, Looper was unlawfully terminated by defendant Gary Harris and defendant Keith Morrison, acting under color of law, in violation of and retaliation for the exercise of her rights to freedom of speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution, and actionable under *42 U.S.C. §1983*.

43. Looper's conversation with Officer X about matters of public concern involved an exercise by her of clearly established rights to freedom of speech and association that are guaranteed by the First and Fourteenth Amendments to the United States Constitution.

44. Reasonable governmental officials would have known that retaliating against Looper by terminating her employment for speaking on matters of public concern violated her Constitutional rights.

45. Defendant Gary Harris and defendant Keith Morrison acted maliciously, willfully, and in wanton and reckless disregard, under color of law, and in disregard of Looper's constitutional rights, in order to chill the exercise of such rights in Looper, Officer X and others, to continue in efforts to conceal departmental problems involving sexual discrimination,

harassment, hostile work environment and retaliatory misconduct, and for other ill conceived motives. As such, each of the individual defendants is liable under *42 U.S.C. §1983*.

46. Looper is entitled to compensatory and punitive damages, and attorney's fees against the individual defendants, in an amount to be determined according to proof.

### Count Three – Title VII Opposition Claims (42 U.S.C. §2000e-3)
### (City of Algood Only)

47. In Looper's conversation with Officer X, Looper reasonably and in good faith believed that Officer X may have suffered from possible discrimination, harassment and/or retaliatory conduct in violation of federal and State law as well as the established policies of the City of Algood, and so advised Officer X to consult an attorney concerning her rights.

48. This conversation and attorney recommendation was in opposition to possible illegal discrimination and retaliation, and so constituted protected conduct under Title VII of the Civil Rights Act, *42 U.S.C. §2000e*.

49. After learning of this conversation and in retaliation therefor, the City of Algood, acting through its delegated officials, was motivated to retaliate against Looper and to terminate Looper's employment in such a manner as would deter a person of ordinary firmness and sensibilities from engaging in that conduct.

50. Looper's termination is causally connected to her conversation with Officer X about possible discrimination and retaliation, and to her recommendation that Officer X consult counsel concerning her rights. As such, Looper's termination was wrongful and unlawful, in violation of the opposition provisions of Title VII, *42 U.S.C. §2000e-3*.

51.     Looper would further aver that throughout the time of her employment with the police department, and thereafter continuing through the present date, Algood has engaged in and has exhibited a systemic pattern and practice of discrimination and retaliatory misconduct against females and members of other classes protected under Title VII.

52.     Looper is entitled to all compensatory and punitive damages, lost earnings and employee benefits such as retirement, health insurance, and other benefits, and attorney's fees and costs against the City of Algood as are allowable at law, in an amount to be determined according to proof.

Count Four – THRA Claims (Tenn. Code Ann. §4-21-101 et seq.)
(City of Algood Only)

53.     In Looper's conversation with Officer X, Looper reasonably and in good faith believed that Officer X may have suffered from possible discrimination, harassment and/or retaliatory conduct in violation of federal and State law as well as the established policies of the City of Algood, and so advised Officer X to consult an attorney concerning her rights.

54.     This conversation constituted protected conduct under the Tennessee Human Rights Act, *Tenn. Code Ann §4-21-101 et seq.* (the "THRA").

55.     After learning of this conversation and in retaliation therefor, the City of Algood, acting through its delegated officials, was motivated to retaliate against and to terminate Looper's employment in such a manner as would deter a person of ordinary firmness from engaging in that conduct.

56.     Looper's termination is causally connected to her conversation with Officer X.

57.     As such, her termination was wrongful, in violation of the THRA.

58. Looper is entitled to all compensatory and punitive damages, lost earnings and employee benefits such as retirement, health insurance, and other benefits, and attorney's fees and costs against the City of Algood as are allowable at law, in an amount to be determined according to proof.

Count Five – Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304
(City of Algood Only)

59. In Looper's conversation with Officer X, Looper reasonably and in good faith believed that Officer X may have suffered from possible discrimination, harassment and/or retaliatory conduct in violation of federal and State law as well as the established policies of the City of Algood, and so advised Officer X to consult an attorney concerning her rights.

60. After learning of this conversation and in retaliation therefor, the City of Algood, acting through its delegated officials, terminated Looper's employment.

61. The sole motivating factor for Looper's termination by the City of Algood was her refusal to remain silent or to otherwise participate in discriminatory activities violating federal and State law, as well as the established policies of the City of Algood prohibiting illegal discrimination and retaliation.

62. As such, Looper's termination was wrongful, in violation of the Tennessee Public Protection Act, *Tenn. Code Ann. §50-1-304*.

63. As a result of her retaliatory discharge, Looper lost earnings and employee benefits such as retirement, health insurance, and other benefits, and is entitled to compensatory and other allowable damages, including attorney's fees and costs, against all defendants on all claims, in an amount to be determined according to proof.

## IV.
## Prayer for Relief

WHEREFORE, premises considered, plaintiff Dana Looper prays for judgment against all defendants as the facts and claims may allow, as follows:

1. Reinstatement to the position that the plaintiff held with the City of Algood Police Department prior to her termination;

2. All pay, benefits, seniority, promotions, leave and emoluments that Looper would have otherwise been entitled to as a police officer had it not been for her unlawful termination in violation of and/or retaliation for exercise of her First Amendment speech rights under the United States Constitution, Title VII, the Tennessee Human Rights Act and the Tennessee Public Protection Act;

3. Interest on the back pay at the full legal rate, such interest accruing from the date each paycheck or other pay item disbursement would have been received had Plaintiff not been terminated;

4. Front pay and benefits, or reinstatement, and all other general, special, compensatory or other damages allowable by statute or law according to the proof;

5. Compensatory and punitive damages against all named defendants according to the proof;

6. Because such misconduct by the City of Algood through its duly delegated officials serves to chill the exercise of protected rights by other City of Algood employees now and in the future, Looper requests that the Court issue a permanent injunction prohibiting

defendants, or any of them, from taking actions designed to chill the exercise by City of Algood employees of their free speech rights;

7. All court costs, and such attorney fees and expenses as are allowable under *42 U.S.C. §1988, 42 U.S.C. §2000e-3, Tenn. Code Ann. §4-21-101 et seq.*, and *Tenn. Code Ann. §50-1-304*;

8. Because there exists between the parties an actual, justiciable controversy for which plaintiff is entitled to a declaration of rights and further injunctive and other relief from the facts, conditions, and circumstances set forth, Looper would ask that the Court issue appropriate injunctions and Orders as will deter such misconduct by the City of Algood now and in the future;

9. Plaintiff Looper asks for such other, further or differing relief as the Court deems appropriate; and

10. A jury of Eight (8) is demanded.

Respectfully submitted.

/s/ Kenneth S. Williams
Kenneth S. Williams (#10678)
**Madewell, Jared, Halfacre, Williams & Wilson**
230 N. Washington Avenue
Cookeville, TN 38501
Telephone: (931) 526-6101
Facsimile: (931) 528-1909
email: ken@madewelljared.com
*Attorney for Plaintiff Dana Looper*